IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | CIVIL ACTION NO. 1:23-cv-01874 |
| Plaintiff, | ) ) ) | COMPLAINT |
| v. | ) ) | JURY TRIAL DEMANDED |
| WHEELER TRUCKING, d/b/a WHEELER TRUCKING, INC. and WHEELER LOGISTICS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, against Wheeler Trucking, d/b/a Wheeler Trucking, Inc. and Wheeler Logistics, Inc., to correct unlawful employment practices including race and/or religious discrimination and retaliation and to provide appropriate relief to Charging Party Charles R. Lynch, III.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio.

1

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the Commission or EEOC), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII.

4. At all relevant times, Wheeler Trucking has been doing business as Wheeler Trucking, Inc. and/or Wheeler Logistics, Inc. in Lorain County, Ohio and nationwide.

5. At all relevant times, Wheeler Trucking, Inc. has been a Michigan corporation and has continuously been doing business in Lorain County, Ohio and nationwide.

6. At all relevant times, Wheeler Logistics, Inc. has been a Michigan corporation and has continuously been doing business in Lorain County, Ohio and nationwide.

7. At all relevant times, Wheeler Trucking, Inc. has continuously had at least 15 employees.

8. At all relevant times, Wheeler Logistics, Inc. has continuously had at least 15 employees.

9. At all relevant times, Wheeler Trucking, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. At all relevant times, Wheeler Logistics, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

11. Wheeler Trucking, Inc. and Wheeler Logistics, Inc. operate under common ownership and management.

12. Wheeler Trucking, Inc. and Wheeler Logistics, Inc. constitute an integrated enterprise as defined by Title VII.

13. Persons who functioned as agents for, and/or who are employed by, Wheeler Trucking, Inc. and/or Wheeler Logistics, Inc. participated in decisions impacting Charging Party's employment and/or were decision-makers concerning matters affecting Charging Party's employment and/or the circumstances pertaining to his work environment, employment, and the promulgation and/or application of policies and practices at Wheeler Trucking.

14. At all relevant times, Wheeler Trucking, Inc. and Wheeler Logistics, Inc. have shared office space, including on Sheridan Road in Flushing, Michigan.

## ADMINISTRATIVE PROCEDURES

15. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of Title VII by Wheeler Trucking, which conducts business under the names Wheeler Trucking, Inc. and/or Wheeler Logistics, Inc (hereinafter "Wheeler").

16. On January 25, 2023, the Commission issued to Wheeler a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Wheeler to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. On February 9, 2023, the Commission issued to Wheeler a Notice of Failure of Conciliation advising Wheeler that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

19. Wheeler operates a trucking and logistics business that provides automotive hauling and logistics services throughout the United States, including in Lorain County, Ohio. According to its website, Wheeler provides services in all 48 of the continental United States and operates terminals throughout the country, including in Lorain County, Ohio.

20. Wheeler Trucking, Inc. employed Charging Party.

21. Wheeler Logistics, Inc. employed Charging Party.

22. Wheeler Trucking, Inc. and Wheeler Logistics, Inc. employed Charging Party as joint employers and/or an integrated enterprise.

23. Charging Party worked for Wheeler from October 2016 until January 2021, when he was separated from employment.

24. Charging Party identifies his race as Middle Eastern and as descending from Israelites and the Hebrew nation. Charging Party adheres to Torah Observant Christianity.

25. Charging Party has sincerely held religious beliefs in observing the Sabbath as a day of rest during which adherent persons do not work.

26. During his employment with Wheeler, Charging Party advised Wheeler of his sincerely held religious beliefs as described above, and he asked Wheeler to accommodate him, including by not requiring him to work on the Sabbath.

27. In the spring of 2020, following a return to work from restrictions and closures imposed by COVID-19, it was reasonable for Wheeler to accommodate Charging Party's religious beliefs by not requiring him to work on the Sabbath.

28. In the spring of 2020, Wheeler concluded that it was reasonable for Wheeler to accommodate Charging Party's religious beliefs by not requiring him to work on the Sabbath.

4

29. Throughout his employment, Charging Party was subjected to harassment because of race and/or religion by coworkers and supervisors including but not limited to calling or referring to him as a "sand nigger," or "towel head;" calling or referring to him as "Osama bin Laden;" insulting him using offensive stereotypes of Muslim or Middle Eastern persons; mocking his religious beliefs and race, including his observation of the Sabbath; criticizing and challenging his interpretation of the Bible, including but not limited to restrictions concerning diet and appearance; ignoring and/or supporting unlawful harassing behavior; threatening or retaliating against Charging Party for opposing or objecting to harassment; and engaging in other unlawful harassment.

30. The harassment occurred under circumstances that were threatening or degrading, and it was severe. For example, Charging Party was harassed while working at a remote work location while performing challenging or dangerous tasks and the harassment occurred for lengthy periods, including for over an hour.

31. The harassment occurred repeatedly, often on a weekly basis, for a period of six continuous months or more, and otherwise was pervasive.

32. Charging Party opposed harassment and discrimination, including responding that it was unwelcome and should stop, reporting or communicating his opposition internally, and seeking accommodations for his sincerely held religious beliefs.

33. After Charging Party opposed the harassment it continued.

34. Wheeler did not take effective steps to stop the harassment or prevent it from recurring.

35. Wheeler engaged in a pattern of tolerating derogatory and/or hostile behavior directed at persons who are African American and against persons who are, or are perceived to

be, Muslim or Middle Eastern, or have racial and/or ethnic characteristics associated with such persons, Wheeler fostered and/or encouraged such behavior, and Wheeler engaged in a pattern of retaliating against persons who opposed such behavior.

36. The harassment culminated in tangible job detriment, including but not limited to denied or revoked religious accommodations and discharge or constructive discharge.

37. Wheeler took materially adverse action against Charging Party because he engaged in protected activity, including but not limited to exacerbated or continued harassment; denied religious accommodation; and discharge or constructive discharge.

38. In or about January 2021, Wheeler scheduled Charging Party to work on Saturdays.

39. In or about January 2021, Wheeler required Charging Party to work on Saturdays.

40. In or about January 2021, Wheeler advised Charging Party that Wheeler was requiring him to work on Saturdays.

41. After he was advised that he was required to work on Saturdays in or about January 2021, Charging Party communicated with Wheeler's Human Resources Department regarding the conflict between his reported sincerely held religious belief and Wheeler requiring him to work on the Sabbath.

42. Charging Party asked Wheeler's Human Resources Department to accommodate him by taking steps to ensure that he would not be required to work Saturdays.

43. Wheeler was aware of a conflict between Charging Party's reported sincerely held religious beliefs and the company requiring him to work on Saturdays.

44. In or about January 2021, Wheeler rejected or denied the request for religious accommodation concerning not scheduling or requiring Charging Party to work on the Sabbath.

45. Beginning in or about January 2021, and continuing up through Charging Party's separation, Wheeler continued to require Charging Party to work on Saturdays.

46. As of January 2021, it was reasonable for Wheeler to accommodate Charging Party's religious beliefs by not requiring him to work on the Sabbath.

47. Wheeler required Charging Party to work on Saturday, January 23, 2021.

48. Wheeler required employees to work scheduled shifts unless they were excused from doing so, and those who failed to work those shifts without being excused from doing so could be subjected to disciplinary action including but not limited to termination.

49. It was reasonable to excuse Charging Party from working on January 23, 2021.

50. On January 26, 2021, Charging Party was subjected to exacerbated harassment, including threats and humiliation which included management. When Charging Party opposed the harassment and emphasized the conflict between the requirement that he work on Saturdays and his religious beliefs, management said that Charging Party's only option was to accept the work conditions or quit. During the same encounter, management became irate, gestured to the road outside the Wheeler facility and told Charging Party to leave, and said to Charging Party: "Fuck your religion."

51. Charging Party was involuntarily discharged from his employment with Wheeler on or about January 26, 2021.

52. In the alternative, Charging Party was constructively discharged from his employment with Wheeler on or about January 26, 2021.

53. As set forth more particularly above, Wheeler violated Title VII when it subjected Charging Party to discrimination because of religion and/or race including subjecting him to unlawful harassment, disparate treatment, and discharging or constructively discharging him.

54. The facts and circumstances establish religious and/or race discrimination by direct evidence, including but not limited to management discharging or constructively discharging Charging Party by saying to him "Fuck your religion," telling him to leave, and/or refusing to accommodate his sincerely held religious beliefs.

55. The facts and circumstances establish that the reason/s Wheeler asserts for its conduct are a pretext.

56. The race discrimination to which Wheeler subjected Charging Party included discrimination based on ethnicity, ancestry, and/or racial or ethnic characteristics.

57. As set forth more particularly above, Wheeler violated Title VII when it subjected Charging Party to a hostile work environment because of religion and/or race. The harassment was perpetuated by non-supervisory and supervisory personnel, and it culminated in tangible employment action. Wheeler was on notice of the harassment and failed to exercise reasonable care to prevent and correct promptly any harassment.

58. As set forth more particularly above, Wheeler violated Title VII when it failed to accommodate Charging Party's sincerely held religious beliefs. Wheeler was aware of the conflict between a work requirement and Charging Party's sincerely held religious beliefs but failed to provide reasonable accommodations.

59. As set forth more particularly above, Wheeler violated Title VII by retaliating against Charging Party because he engaged in protected activity, including but not limited to subjecting him to further harassment and other materially adverse action, and discharging or constructively discharging him.

60. The effect of the practices described above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of race, religion, and protected activity.

61. The unlawful employment practices described above were intentional.

62. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Charging Party.

63. As a result of the violations described above, Charging Party was deprived of wages, employment benefits, and other harm that is compensable pursuant to Title VII.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Wheeler, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Wheeler from discriminating against persons on the basis of their religion and race and from retaliating against persons who engage in protected activity under Title VII.

B. Order Wheeler to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by Title VII, including policies designed to prevent and remedy race and religious harassment and to provide religious accommodations, and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

C. Order Wheeler to make whole Charging Party by providing to him appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

  D. Order Wheeler to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

  E. Order Wheeler to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

  F. Order Wheeler to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  G. Grant such further relief as the court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

s/Kate Northrup
KATE NORTHRUP
Supervisory Trial Attorney

s/Sabrina L. Brown
SABRINA BROWN, Bar No. 0096700
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th St., Suite 3001
Cleveland, Ohio 44199
Sabrina.Brown@eeoc.gov
Phone: (216) 306-1116
Fax: (216) 522-7395